**FALK, Appellee,**

v.

**WACHS et al.; GatesMcDonald, Appellant.**

[Cite as *Falk v. Wachs* (1996), 116 Ohio App.3d 716.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 2521–M.

Decided Dec. 18, 1996.

*Sammon & Bolmeyer Co., L.P.A.,* and *David J. Briggs,* for appellee.

*Arter & Hadden* and *Michael J. Bertsch,* for appellant.

SLABY, Judge.

Defendant-appellant, GatesMcDonald, appeals from the judgment of the Medina County Court of Common Pleas denying its Civ.R. 60(B)(5) motion for relief from judgment. We affirm.

GatesMcDonald is the authorized workers' compensation service company that administers Owens Corning Fiberglas's self-insured workers' compensation program. In 1979, William A. Wachs was injured in the course of his employment at Owens Corning. In 1980, Wachs hired plaintiff-appellee, attorney Arthur V. Falk, to represent him in his Bureau of Workers' Compensation ("BWC") claim. Falk handled Wachs's claim through the years, and eventually negotiated a $32,500 final settlement with GatesMcDonald. This was approved by the Indus-

trial Commission of Ohio on July 24, 1991. Wachs had agreed to pay Falk one-third of any settlement. GatesMcDonald sent the settlement draft for the entire $32,500 directly to Wachs, without sending Falk his fee or including him as a copayee. Wachs cashed the check but failed to pay Falk.

Attorney Falk filed suit against Wachs for failure to pay the fee, and against GatesMcDonald for negligent and wrongful distribution of the settlement check directly to the client, despite having full knowledge of Falk's representation. Both defendants were properly served, but they failed to answer or otherwise make an appearance. After a hearing, the court granted a default judgment on November 16, 1992, finding Wachs and GatesMcDonald jointly and severally liable for the $10,833.33 attorney fee. No further action occurred for almost two years, until November 1994, when Falk attempted to collect from GatesMcDonald by garnishing its bank account.

GatesMcDonald acknowledged that certified mail service of the original complaint and the notice of default judgment were perfected when received by a mailroom employee, but claimed that no one in authority was aware of the legal action until November 1994, when garnishment proceedings commenced. At that time, GatesMcDonald indicated that a Civ.R. 60(B) motion for relief from judgment would be filed within the week.

Eleven months later, on October 2, 1995, GatesMcDonald filed a Civ.R. 60(B)(5) motion, claiming that it was entitled to relief from judgment because plaintiff's complaint had failed to state a claim upon which relief could be granted. GatesMcDonald alleged that a C–230 power of attorney form, entitling Falk to receive the settlement proceeds, had not been filed; therefore, the judgment was based on a legally nonactionable claim. GatesMcDonald maintained that its motion was timely because it had been filed within one year from the time it first learned of the default judgment.

■ On December 1, 1995, the trial court denied GatesMcDonald's Civ.R. 60(B)(5) motion. The court found that the motion, filed approximately eleven months after GatesMcDonald allegedly learned of the judgment and thirty-five months after the judgment itself, was untimely. On January 2, 1996, GatesMc-Donald appealed.[1]

---

1. On December 5, 1995, GatesMcDonald requested reconsideration of the trial court's judgment entry based upon arguments set forth in a reply brief filed on November 20, which the court had not received when it issued its December 1 denial of the Civ.R. 60(B) motion. On January 10, 1996, *after* this appeal was filed, the trial court issued a superseding order in favor of GatesMcDonald, vacating the December 1, 1995 denial of relief from judgment and the November 16, 1992 default judgment as to GatesMcDonald.

Because an appeal had already been filed, the trial court was without jurisdiction to issue that order. This court granted GatesMcDonald's motion to remand in order to properly vest

#### Assignment of Error

"The trial court erred in denying separate defendant GatesMcDonald's motion for relief from judgment by order dated December 1, 1995."

In order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate (1) a meritorious claim or defense, (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) timeliness of the motion. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. If any of these three requirements is not met, the motion should be overruled. *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 351, 6 OBR 403, 406, 453 N.E.2d 648, 651. The burden is on the movant to demonstrate that the interests of justice demand the setting aside of a judgment normally accorded finality. *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 21, 520 N.E.2d 564, 567.

GatesMcDonald has invoked the fifth, catchall category under Civ.R. 60(B), "any other reason justifying relief from the operation of the judgment." Such a motion must be given a narrow application, and the grounds for its use should be substantial, not merely a substitute for an appeal. *Caruso–Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 66, 5 OBR 120, 122, 448 N.E.2d 1365, 1367. A Civ.R. 60(B)(5) motion is not necessarily limited to one year from the date of judgment, as are the first three grounds, but it must be brought "within a reasonable time."

The determination as to what constitutes a reasonable time is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *Miamisburg Motel v. Huntington Natl. Bank* (1993), 88 Ohio App.3d 117, 623 N.E.2d 163; see, *e.g., Kay v. Glassman* (1996), 76 Ohio St.3d 18, 20, 665 N.E.2d 1102, 1105 (movant met timeliness requirement when filed only one day after learning of default judgment); *Michael D. Tully Co., L.P.A. v. Dollney* (1987), 42 Ohio App.3d 138, 537 N.E.2d 242 (motion filed thirty-six days after default judgment was timely).

Courts have held that unjustified delays of considerably less time than the eleven months GatesMcDonald waited were untimely. See, *e.g., Larson v. Umoh* (1986), 33 Ohio App.3d 14, 17, 514 N.E.2d 145, 148 (motion untimely where filed seventy-two days after entry of judgment and fifty-three days after learning of

the trial court with jurisdiction to reconsider the matter. See *Howard v. Catholic Social Serv.* (1994), 70 Ohio St.3d 141, 637 N.E.2d 890. Upon remand, the trial court declined to take further action and ruled that its order of December 1, 1995 would stand.

Accordingly, the appeal proceedings for the Civ.R. 60(B) denial were resumed.

the action); *Mount Olive Baptist Church v. Pipkins Paints* (1979), 64 Ohio App.2d 285, 289, 18 O.O.3d 319, 321, 413 N.E.2d 850, 854 (an unjustified four-month delay necessarily precludes relief from a money judgment). Even for the first three grounds of Civ.R. 60(B), where the rules provide for *up to* one year from a judgment in which to file, where a party learns of grounds to set aside a judgment within a month of that judgment, but waits until the last day before the year is up, the motion may be considered to have been brought too late. Staff Notes, Civil Rule 60(B); see, also, *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 106, 68 O.O.2d 251, 256, 316 N.E.2d 469, 476–477.

GatesMcDonald has not offered any reasons why its motion, filed almost three years after the default judgment, and eleven months after appellant acknowledged that it learned of the judgment, should be considered timely. In the absence of any explanation for the delay in filing the Civ.R. 60(B) motion, the movant has failed to meet its burden of establishing the timeliness of the motion. See *Youssefi v. Youssefi* (1991), 81 Ohio App.3d 49, 53, 610 N.E.2d 455, 457. We do not find that the trial court's denial of GatesMcDonald's motion for being untimely was an abuse of discretion.

On appeal, GatesMcDonald now argues that it was entitled to relief from the default judgment because the trial court lacked subject matter jurisdiction.[2] A judgment rendered by a court lacking subject matter jurisdiction is void *ab initio* and may be vacated by virtue of the inherent power of the court independent of the grounds for vacation of a judgment pursuant to Civ.R. 60(B). *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph four of the syllabus. A motion to vacate a void judgment need not comply with the requirements of Civ.R. 60(B). *Demianczuk v. Demianczuk* (1984), 20 Ohio App.3d 244, 20 OBR 305, 485 N.E.2d 785; see, also, Civ.R. 12(H)(1). Subject matter jurisdiction may be raised for the first time on appeal, or it may be raised *sua sponte* by the court at any stage of the proceedings. *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 238, 2 O.O.3d 408, 409, 358 N.E.2d 536, 537.

GatesMcDonald argues that subject matter jurisdiction for a fee dispute concerning a workers' compensation claim lies only with the Industrial Commission of Ohio, relying upon R.C. 4123.06, Joint Resolution R89–1–008 of the Industrial Commission and BWC, and *Julian Kahan & Assoc. Co., L.P.A. v. Greathouse* (June 30, 1994), Cuyahoga App. No. 65544, unreported, 1994 WL 317778. In *Kahan,* the court held that, pursuant to the legislative and administrative directives, "claimants' attorneys are directed to timely resolve fee disputes

---

**2.** This issue was raised for the first time by GatesMcDonald in its November 1995 reply brief to the trial court and in its motion for reconsideration. See Footnote 1 above.

with the Industrial Commission prior to commencement of judicial action." *Id.* at *3.

R.C. 4123.06, pertaining to the regulation of attorney fees and practice standards, provides that the Industrial Commission shall adopt rules concerning the payment of attorney fees and "shall protect parties against unfair fees." It requires the commission to fix the amount of fees "in the event of a controversy" and directs the commission to prominently display notices to inform claimants of the commission's statutory authority to resolve fee disputes. See *id.* The statute also authorizes the commission to set reasonable standards for attorneys who practice before the BWC.

Ohio Adm.Code 4123–3–24, entitled "Fee Controversies," states:

"When a controversy exists between a party and his representative concerning fees for services rendered in industrial claims, either the party or the representative may make a written request to the commission to resolve the dispute. Such request must be completed and filed in accordance with the rules of the industrial commission, the matter being within the exclusive jurisdiction of the industrial commission."

GatesMcDonald has not demonstrated how either the statute or the administrative regulations mandate exclusive jurisdiction before the Industrial Commission according to the facts in the case *sub judice.* While the statute grants the commission broad authority to prevent the exploitation of claimants, it mandates specific attorney fee approval procedures only where there is a fee controversy and with respect to services rendered in securing a lump-sum payment under R.C. 4123.64; this case involves a final settlement agreement with a private, self-insured employer under R.C. 4123.65.

Moreover, the language of the Administrative Code and the statute is plain on its face; it is intended to address only disputes "between a party and his representative"; "[t]he fee controversy has to be between the attorney and his client." *Sonkin & Melena Co., L.P.A. v. Zaransky* (1992), 83 Ohio App.3d 169, 178, 614 N.E.2d 807, 813. The doctrine of standing requires a litigant to be in the proper position to assert a claim, and the party's inquiry must be within the zone of interest intended to be protected or regulated by the statute. See *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, 152, 522 N.E.2d 464, 467. GatesMcDonald, as a third-party administrator representing a self-insured employer, would not appear to have standing in the resolution of a fee dispute between a claimant and his representative.

The administrative regulation provides an option by which a party or attorney "may" request the commission to resolve a dispute. The provision, however,

specifically pertains to "fee controversies"; Falk's complaint alleges breach of contract and negligence.

*Kahan v. Greathouse, supra,* Cuyahoga App. No. 65544, illustrates where it would be appropriate to request the authority of the Industrial Commission to intervene and resolve an actual fee dispute between an attorney and his client. The attorney, Julian Kahan, claimed he was entitled to more than $31,000 in fees for services rendered from 1982 until 1988. His client admitted that he had agreed to a one-third contingency fee, but denied that the attorney had represented him during most of those years. The attorney submitted the fee dispute to the Industrial Commission, which issued a binding ruling finding that the claimant owed only $3,483 in fees. The commission ruled that the attorney was not entitled to take a percentage of ongoing temporary total compensation and that the attorney's billing was time-barred as a matter of law. The jurisdictional issues present in *Kahan* are distinguishable from those now before us.

In the case *sub judice,* Falk's legal entitlement to the fee and its amount are not being disputed. The courts have recognized an "attorney's contractual right to collect a portion of a workers' compensation lump-sum award as payment for the attorney's efforts in obtaining the award." *Rowan v. Rowan* (1995), 72 Ohio St.3d 486, 488, 650 N.E.2d 1360, 1363 (upholding the payment of a one-third contingency fee agreement before disbursement is made to the child support enforcement agency). The issue in this case, whether or not GatesMcDonald was negligent in paying the award without protecting Falk's interest, would have been a matter to have been addressed at trial if the original complaint had been answered.

GatesMcDonald has not demonstrated how the facts in this case would preclude the Medina County Court of Common Pleas from exercising jurisdiction pursuant to R.C. 2305.01. The original default judgment and the denial of appellant's motion for relief from judgment are not void due to lack of subject matter jurisdiction, and the trial court's denial of relief from judgment was properly within the court's discretion.

Appellant's assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and DICKINSON, J., concur.